UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WADE HAMPTON BIGELOW,

                   Petitioner,

vs.                                Case No.  2:09-cv-107-FtM-29SPC

S.M. CULPEPPER Warden; FLORIDA
ATTORNEY GENERAL,

                   Respondents.
_____

## OPINION AND ORDER

### I. Status

     Wade Hampton Bigelow (hereinafter "Petitioner," "Defendant," or "Bigelow") initiated this action by filing a timely[1] *pro se* Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254.  The Petition challenges Petitioner's 2004 plea-based judgment of conviction entered in the Twentieth Judicial Circuit Court, Lee County, Florida in case number 91-1969-CF.  The Petition *sub judice* raises eight grounds, which contain multiple sub-claims, for relief:

                   GROUND ONE

          Defendant was denied due process when the
          State destroyed evidence and failed to
          disclose evidence.  The prosecutor denied
          defendant defense counsel.  Defendant was
          denied compulsory process.  Defendant was
          actually denied defense counsel, and

_____

     [1]Respondent concedes that, based upon Petitioner's post conviction motions, the Petitioner is timely filed under AEDPA.  Response at 21.  The Court agrees the Petition is timely filed.

constructively denied appellate counsel due to
appellate counsel failing to raise all
arguable grounds on direct appeal.
Furthermore, the State defaulted by failing to
address all of defendant's *pro se* issues in
their response to the show cause order.

## GROUND TWO

The prosecution failed to disclose all
evidence, and destroyed all evidence collected
prior to trial and prosecution.

## GROUND THREE

Defendant was denied defense counsel at all
critical stages of the proceedings, creating a
structural error.

## GROUND FOUR

The State breached the plea agreement and
subjected defendant to double jeopardy.

## GROUND FIVE

Defendant was denied compulsory process for
the defense witnesses.

## GROUND SIX

The court entered into the proceedings,
becoming a participant, giving advice to the
prosecutor, trespassing [sic] the defendant.
The judge was biased and displayed apparent
biased rulings on the record.

## GROUND SEVEN

The State prosecutor had a conflict of
interest.

## GROUND EIGHT

(A) Ineffective assistance of trial counsel for the
following reasons:

(1) Trial counsel was ineffective for failing
to investigate defendant's documented

psychological disability in effect on the date
of the alleged offense.

(2) Trial counsel was ineffective for failing
to investigate defendant's long history of
disability and his treatment, and failed to
present this issue before the court for
consideration.

(3) Trial counsel failed to move for dismissal
due to the prosecutorial misconduct that
denied defendant defense counsel, alienated
defense witness Henrietta McKinney, and
committing these acts off the record which
created no record to review this misconduct,
and this prosecutorial misconduct was grounds
for procedural default.

(4) Trial counsel failed to preserve issues of
merit for direct appeal, and failed to present
issues defendant requested be placed before
the court. Trial counsel waived critical
issues without a thorough inquiry of
defendant's understanding and comprehension of
the rights of defendant that counsel was
waiving.

(B) Ineffective assistance of appellate counsel for the
following reasons:

(1) Appellate counsel failed to point out on
the record the valid grounds to uphold
defendant's meritorious pro-se issues; and,

(2) Appellate counsel failed to raise the
issue of ineffective assistance of trial
counsel.

Petition at 6-15. Petitioner submitted a memorandum of law in

support of his Petition (Doc. #47, Memorandum). Respondent filed

a Response to the Petition (Doc. #44, Response). Respondent

submits that the Petition should be denied due to Petitioner's

voluntary *nolo contendre* plea, dismissed as procedurally barred, or

denied due to Petitioner's failure to satisfy his burden under 28

U.S.C. § 2254(d), (e).  Response at 21-22.  Respondent filed exhibits (Exhs. 1-34) in support of the Response (Doc. #46), including: (Exh. 5) the transcript of the July 20, 1994 plea hearing; (Exh. 8) the transcript of the September 29, 2004 hearing on Petitioner's motion to withdraw plea; (Exh. 9) transcript of October 27, 2004 hearing; and, (Exh. 11) transcript of the December 1, 2004 hearing.  Petitioner filed a reply to the Response (Doc. #47, Reply).  This matter is ripe for review.

## II. PROCEDURAL HISTORY

On September 27, 1991, the State filed an Information in case number 91-1960-CF charging Bigelow with Sexual Battery of a child under the age of 16 (Count 1); unlawfully handling or fondling a child under 16 in a lewd, lascivious, or indecent manner, by placing her hand(s) on his penis (Count 2); and unlawfully and knowingly committing a lewd or lascivious act in the presence of a child under the age of 16 (Count 3).  Exh. 1.  On October 24, 1991, the State filed a Habitual Felony Offender Notice.  Exh. 2.

Bigelow, who was out on bond, became a fugitive from justice until his June 2, 2003 arrest on a bench warrant.  On December 2, 2003, defense counsel filed a motion to dismiss case number 91-1960-CF on the basis that four bags of "exculpatory evidence" had been "intentionally destroyed by the State."  Exh. 3.  On April 30, 2004, the court issued an order denying the motion, finding that the alleged acts of wrongdoing occurred on August 15, 1991, that the physical evidence collected in the case in connection with the

incident had been destroyed by law enforcement in 1997, and that the proceedings resumed in 2003, after the bench warrant for Petitioner's arrest. <u>Id.</u> at ¶1.   The court, citing to <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988), further found that the evidence was not destroyed in bad faith.  Exh. 4.

### A.    Entry of *Nolo Contendere* Plea

On July 20, 2004, Bigelow entered a *nolo contendere* plea to all three counts as charged in the Information.  Exh. 5.  Bigelow signed a written plea form.  Exh. 6.  After Bigelow was placed under oath, the following exchange took place:

> THE COURT: Mr. Bigelow, if at any point during these proceeding there is anything that is not clear to you, you don't understand or are uncertain about, please stop and confer with your attorney.  We'll give you an opportunity to do that, if you wish to do so.  Do you understand?
>
> DEFENDANT: (Nodded head in the affirmative).
>
> THE COURT: All right.

Exh. 5 at 4.

The prosecutor proceeded with the plea colloquy, as follows:

> Q: Do you understand why you're here today, sir?
>
> A: Yes.
>
> Q: How far have you gone in school?
>
> A: I have a G.E.D.
>
> Q: Can you read, write and understand the English language?

A: Yes.

Q: Today are you under the influence of any drugs, alcohol or prescription medication that would affect your understanding of what's going on here today?

A: No.

Q: Have you ever been diagnosed with any sort of mental illness that would affect your understanding of what's going on here today?

A: Have I ever been diagnosed?

Q: Are you currently suffering from a mental illness that would affect your understanding of what's going on here today?

A: I haven't received any treatment lately, no, for that.

Q: Do you have a mental illness that affects your understanding of what's going on here today?

A: I've had problems in the past.

Q: Okay. Do you feel today that you are alert? That you understand what's going on?

A: Yes.

Q: Do you feel that you have had adequate time to discuss the facts of the case with your attorney and with your daughter Rachel?

A: I had a conversation with them, yes.

Q: Okay, do you feel that you've had adequate time to discuss, I guess, the ramifications of this entry of this plea?

A: Yes.

Q: Okay, and once again, sir, do you understand why you're here today?

A: Yes.

Id. at 6-7.  Bigelow then tendered his no contest plea.  Id. at 7-8.  Further, it was explained to Bigelow that, by entering the plea, he was giving up his right to a jury trial, to see and hear witnesses testify against him, to see the evidence against him, and to have his attorney cross-examine those witnesses and challenge that evidence.  Id.  It was also explained to him that he was waiving his right to present witnesses and evidence on his own behalf, as well as his right to speak or remain silent.  Id. at 8.  Bigelow agreed he had adequate time to read through the plea form, and did not feel coerced or threatened into entering the plea.  Bigelow agreed that the plea was in his best interest.  Id. at 9-10.

Bigelow acknowledged that he was satisfied with his attorney's services:

Q: Are you satisfied with Mr. Wetter's representation of you?

A: Yes.

Q: Has he answered all of your questions and done everything you asked?

A: Yes.

Id. at 10.

During the plea, the issue of Bigelow's sentence was discussed:

> Q: Has anyone promised you anything other that you will be sentenced to eight years in Florida State Prison as a habitual felony offender?
>
> A: Uh, from what I understand, that's everything that I have to do.
>
> Q: And that you would give 100 percent of eight years. Is that what your understanding is?  Minus any credit you have accrued?
>
> A: And gain time.
>
> Q: Okay. Well, you understand, sir, that the — as a habitual felony offender you may not be entitled to gain time, and that the Department of Corrections would have to make that determination?
>
> A: I am confused on that.
>
> THE COURT: Take a moment and talk with your attorney.
>
> (Whereupon, a discussion was held off record between Mr. Wetter and Bigelow from 9:40 to 9:45 am).
>
> THE COURT: Let's go back on the record.  Have you had a chance now, Mr. Bigelow, to discuss any questions you have with your attorney, Mr. Wetter?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: Please proceed.
>
> Q: Sir, do you have any questions - - any other questions at this time for your attorney?
>
> A: I can't think of anything.
>
> Q: Okay.  Do you understand now, sir, that in a separate proceeding the State will attempt to prove that you are a habitual felony offender, and that based upon that you could — you will be sentenced to eight years incarceration?

-8-

A: I don't — I don't understand that.  I don't understand what you mean.

Q: Okay.  Do you understand, sir, that back in 1991 we filed a habitual felony offender notice that we were seeking to have you sentenced as a habitual felony offender because of your past record?  Do you recall that?

A: No.

Q: Okay.  Have you ever had that explained to you?
A: No.

Q: Okay.

MR. WETTER: Judge, if I can clarify?

THE COURT: Yes Sir.

MR. WETTER: I went to the — after the offer was conveyed yesterday, last night around 9:00 I went to the jail.  I have discussed with him on previous occasions what it means to be a HFO.  Last night I went into a detailed discussion of what it would mean as a possible sentencing at the conclusion of a trial upon convictions. Um, he seemed to understand it when I explained it to him last night.

But I can understand his confusion as we speak today because initially he was under the impression that it was not gong to be a habitualized eight years.  However, that was the original offer I conveyed to him last night at the jail.  I came in this morning, the State clarified that.  So I did try to attempt, but I believe Mr. Bigelow had in his mind it was not going to be habitualized. And this morning I did explain to him that it was in fact that.

Id. at 10-13.  The Judge then addressed Bigelow.

THE COURT: All right, Mr. Bigelow, there has to be a separate proceeding in which the State is required to

-9-

bring in certified copies of Judgment and Sentence forms for any qualifying offenses which they feel qualify you as a habitual felony offender.  And they have — they will have fingerprint cards, they'll have a fingerprint expert to identify or to compare those to make certain that the person who was sentenced in those judgment and sentence forms was you, the same person before the Court at the time of sentencing.  If they're not able to establish what are called predicate offense, then you would not be classified or found to be a habitual felony offender. They must do that before you can be found a habitual felony offender.

If you are found not to be a habitual felony offender, in other words, the qualifying offenses are not proven, then I would find you do not qualify as a habitual felony offender and that would not apply to your sentence.

If they do prove that, then they will also have to make argument to the Court that it is necessary that you be sentenced as a habitual felony offender for the protection of the people of the State of Florida, and any other aspect of your record.  And Mr. Wetter can argue against that if he feels - - and you want him to, he feels it appropriate.  And then I would make my determination on whether or not you qualify and whether you should be sentenced as a habitual felony offender.

So there is another proceeding that has to — the State has another hurdle they have to go over before they can obtain that habitual felony status. Do you understand?

Defendant: I understand what you said, sir.  How long does this take?

THE COURT: We'll, I'll set — let's see, we've got July 20.  Can we waive Presentence Investigation?

MR. WETTER: Yes, Judge.

THE COURT: All right, August 4th. It will be two weeks from tomorrow at 1:00 in the afternoon.

<u>Id.</u> at 13-14.  Bigelow told the judge he was having "difficulties

. . . following all of this."  <u>Id.</u> at 14.  He stated that he had

been off his medications since his sixteen-month incarceration.

<u>Id.</u> at 15.  Bigelow claimed he previously took "Xanax, Valium,

Zoloft  and  Imitrex"  and  was  suffering  a  migraine.   <u>Id.</u>

Nonetheless, Bigelow stated he wanted to proceed with the plea.

<u>Id.</u>

> THE COURT: Sure.  All right, Mr. Bigelow, now you had an
> opportunity to talk with Mr. Wetter, and there has been
> some months while this case has been prepared and ready
> for trial.  There have been postponements and there have
> been various preliminary proceedings where Mr. Wetter has
> attempted to obtain certain evidence and other matters.
> He's done a lot of things on your behalf.  But do you
> understand that if I accept this plea today, the plea
> ends right here.  There is no issue remaining for appeal.
> Is that clear?
>
> DEFENDANT: Yeah, I understand what you say, Your Honor.
>
> THE COURT: Okay, I mean it ends right here.  All right?
> The only thing that remains is the sentencing hearing,
> because we have to get the fingerprints prepared and Mr.
> Wetter wants to look at the score sheet to make sure that
> it's correct and everything is your best interest.  Do
> you understand that?
>
> DEFENDANT: Yeah.
>
> THE COURT: Do you have any questions then about the entry
> of this plea?
>
> DEFENDANT: No.
>
> THE COURT: You feel you understand it?
>
> DEFENDANT: I believe so.

> THE COURT: All right, then you feel it's in your best
> interest to take the State's offer?
>
> DEFENDANT: That's what I was told.
>
> THE COURT: All right, then I find you are today [sic]
> alert, you understand the nature of the charge and the
> consequence of entering this plea.  You've had the
> assistance of a competent attorney with whom you indicate
> you're satisfied.
>
> I accept your plea and adjudge you to be guilty of Lewd
> Sexual Battery, one count; Lewd Act in the Presence of a
> Child, and Lewd Act Upon a Child, all third degree - -
> excuse me, all second degree felonies.

Id. at 16-17.  After adjudicating Bigelow guilty, the court

scheduled a sentencing hearing, and prior to adjourning again asked

Bigelow if he had any questions.  Bigelow responded "No, sir."  Id.

at 18.

As noted above, Bigelow signed the plea form which included a

specific section acknowledging that Bigelow understood the plea

agreement and discussed the case with his attorney.   More

specifically, the agreement stated:

> I have read the information in this case, or have had it
> read to me, and I fully understand the terms of the plea
> agreement and charge(s) to which I enter my plea(s).  My
> lawyer has explained to me the maximum penalty for the
> charge(s), the essential elements of the crime(s), and
> possible defenses to the crime(s), and I understand these
> things.

Exh. 6 at  2.  The plea form also included a section regarding

early release from prison:

> No one, including my attorney has made any promises to me concerning eligibility for any form of early release, provisional gain time credit, time off for good behavior, the accrual of gain time, or the actual amount of time to be served under the sentence which will be imposed or any condition of circumstance of confinement in the Department of Corrections.

Id. at 3-4.

### B.   Bigelow's Motion to Withdraw Plea

On September 2, 2004, Bigelow filed a *pro se* "Motion to Withdraw Plea or To Enforce Original Plea as Presented." Exh. 7. Bigelow claimed that he entered a plea to eight (8) years "straight time, eligible for all gain time." Id. at 1. Bigelow claimed that the prosecutor changed the terms of the plea agreement. Id. Additionally, Bigelow stated that he now wanted to "reserve an issue for appeal, particularly, the court's denial of defense motion to dismiss." Id. at 2.

On September 29, 2004, after permitting Attorney Steven Wetter to withdraw, the Court appointed attorney J. L. "Ray" LeGrande to continue the representation of Bigelow. Exh. 8.  On October 27, 2004, Bigelow and his new counsel appeared before the court.  Mr. LeGrande made the court aware that he had filed a motion to strike Bigelow's *pro se* motion to "reserve issues for the record" and the Court granted the motion to strike. Exh. 9 at 3.  Mr. LeGrande then asked the Court to entertain his "Motion to Proceed with Sentencing," requesting that the court proceed with sentencing while reserving Bigelow's right to argue the appropriateness of

applying the habitual offender statute.  Exh. 9 at 2.  The court granted the prosecution's motion for an extension of time to assess how it wanted to proceed in the matter.  Id. at 8-9.

On November 30, 2004, the State filed a "Motion to Enforce Plea Agreement."  Exh. 10.  The motion pointed out that the State had filed a notice of intent to seek a habitual offender sentence on October 25, 1991.  The State conceded that the plea form neglected to mention the habitual felony offender sentencing, but argued that the court record of the plea colloquy clearly demonstrated that Bigelow had full knowledge he could be sentenced as a habitual felony offender when he accepted and agreed to the plea agreement.  The prosecutor also included a sworn affidavit that at all times during discussions of the plea offer, he informed defense counsel, Mr. Wetter, that the State would be seeking a habitual felony offender sentence in the matter.

### C.   Sentencing Hearing/Withdraw of Motion to Withdraw Plea

On December 1, 2004, the court held a sentencing hearing.

Exh. 11.  Bigelow was present with his new counsel, Mr. LeGrande,

who advised the court of Bigelow's position on sentencing.

> MR. LEGRANDE: At this time, Mr. Bigelow wants the plea
> bargain enforced, as the State has indicated it is
> desirous of doing, and that is based upon a contract
> argument, Frazer vs. State (phonetic), which the Court's
> familiar with.  Bigelow desires today to have the eight-
> year sentence imposed regardless of whether the Court
> chooses to find or make a finding-
>
> THE COURT: Mm-hmm.
>
> MR. LEGRANDE: --that habitual offender sanctions do apply
> or not. So he's interested in the eight-year sentence
> being imposed.

Exh. 11 at 3-4.   More specifically, Bigelow agreed to proceed with

sentencing, but challenged the application of the Habitual Felony

Offender statute, citing the absence of any mention of the statute

in his plea form and arguing that "based upon that contract basis"

the Habitual Felony Offender statute does not apply.  Exh. 11 at 4.

The State countered that essentially Bigelow was "arguing the

voluntariness of his plea," and cited to the prior plea colloquy

where the terms for a habitual felony offender statute were clearly

agreed.  Id. at 5.  Defense counsel advised the court that Bigelow

no longer wished to withdraw his plea.

> THE COURT: All right, Mr. LeGrande, if Mr. Bigelow wishes
> to persist in his motion to withdraw his plea -
>
> MR. LEGRANDE: He does not, Your Honor.

-15-

_Id._ at 9.   Again, after counsel conferred with his client, Bigelow agreed to proceed with sentencing.   _Id._ at 10.   Defense counsel stated, "Your Honor, the defendant wishes to proceed with the sentencing today . . . recognizing that if he does, that the issue related to the contractual basis is not appealed [sic]."   _Id._ at 10-11.

The State then presented evidence to establish the predicates qualifying Bigelow for enhanced sentencing as a habitual felony offender.   _Id._ at 11-19, 20-22, 24.   The court found that Bigelow qualified "as an habitual felony offender."   _Id._ at 29.   Prior to pronouncing the sentence, the court permitted Bigelow to address the court.   _Id._   Bigelow referenced his prior physical and psychological problems, expressed dissatisfaction with his first attorney Peter Ringsmuth, and complained that the prosecutor had discussed the case with the media.   _Id._ at 30-33.   Finally, Bigelow pleaded with the court for "mitigation and mercy."   _Id._ at 34.

The court sentenced Bigelow to an eight-year sentence, after acknowledging the score sheet called for 27 years to life, telling Bigelow "that's your mitigation."   _Id._   The court further ruled that the eight-year prison sentence on each of the three counts would be served as a habitual felony offender, concurrent with any other sentences Bigelow was serving, with credit for time already served.   _Id._ at 35; Exh. 12.   Finally, the court found Bigelow to be a Sexual Offender, and remanded him to the custody of the

Sheriff for transportation to the Department of Corrections.  Id.
at 37, 38.

### D.    Direct Appeal

Petitioner filed a direct appeal raising one issue: Whether
the court erred in sentencing Bigelow as a habitual felony
offender.  Exh. 13.  After the State filed an answer, the appellate
court *per curiam* affirmed Bigelow's judgment and sentence on August
24, 2007.  Exh. 15; <u>Bigelow v. State</u>, 963 So. 2d 234 (Fla. 2d DCA
2007).

### E.    Rule 3.850 Motion

On September 28, 2007, Bigelow filed a *pro se* motion for post
conviction relief pursuant to Rule 3.850 of the Florida Rules of
Criminal Procedure ("Rule 3.850 Motion").  Exh. 17.  Bigelow raised
the following four grounds for relief, with various sub-claims:

Ground One

(a)  Bigelow's *nolo contendere* plea was
"unlawfully induced or not made voluntary with
the understanding of the consequences of the
plea" because "the state and the Court went
outside the terms of the plea contract and
sentenced defendant as a habitual felony
offender (H.F.O.), even though the plea
contract was silent as to the H.F.O.
sentencing";

(b)  Trial counsel was ineffective for
affirmatively misadvising Bigelow that his
plea would result in 1/3 off (32 months) in
gain time at sentencing.

-17-

Ground Two

(a) Trial counsel was ineffective for advising Bigelow that his plea would result in 1/3 off (32 months) in gain time at sentencing;

(b) Trial counsel was ineffective for failing to preserve for direct appeal the trial court's denial of the defense's motion to dismiss;

(c) Trial counsel was ineffective for failing to investigate Bigelow's psychological disability;

(d) Trial counsel was ineffective for failing to provide Bigelow with copies of motions or files concerning his case and insisted that Bigelow remain silent at all times unless spoken to directly;

(e) Trial counsel was ineffective for waiving Bigelow's right to a pre-sentence investigation without consulting him and then withdrawing from his case prior to sentencing;

(f) Trial counsel was ineffective for failing to object to the habitual felony offender sentence and to a postponement of the sentencing hearing;

(g) Trial counsel was ineffective for withdrawing all prior defense motions on the day of sentencing, without consulting Bigelow;

(h) Trial counsel was ineffective for failing to object to Bigelow's lack of notice of the State's intention to pursue habitual felony offender designation and sentencing;

(i) Trial counsel was ineffective for failing to investigate Bigelow's psychological disability.

-19-

Ground Three

The prosecution failed to disclose favorable
evidence to the defense.  Defendant claims
that the physical evidence at issue was
collected by Agent Tom Busatta and the Lee
County Sheriff's Office "intentionally and in
bad faith destroyed" it.

Ground Four

Cumulative error, in that Bigelow's conviction
was "obtained by the failure to provide
constitutional rights, due process, and
'misconduct' by the prosecution and 'officers'
of the court, which contributed to the denial
of the right to appeal and prejudiced the
defense and denied Defendant his right to
liberty guaranteed by the U.S. Constitution."

The State filed a response with numerous record attachments.
Exh. 18.  Bigelow filed a reply to the State's response.  Exh. 19.
Bigelow proceeded to filed numerous supplemental and amended post
conviction pleadings, which were all dismissed by the court for
lack of a proper oath, or otherwise improperly filed.   See
generally Exhs. 20, 21, 22, 23, 24, 25, 26, and 27.  On April 28,
2008, the post conviction court issued an order summarily denying
or dismissing all four grounds and sub-claims raised in the
original Rule 3.850 motion.  Exh. 28.  Bigelow appealed the summary
denial of his Rule 3.850 motion.  Exhs. 29, 30.  On February 11,
2009, the appellate court *per curiam* affirmed the post conviction
court order denying or dismissing Bigelow's Rule 3.850 motion.

Bigelow v. State, 3 So. 3d 325 (Fla. 2d DCA 2009); Exh. 31.
Mandate issued on March 10, 2009. Bigelow's request for
discretionary review in the Florida Supreme Court was dismissed for
lack of jurisdiction on June 4, 2009. Exh. 33; Bigelow v. State,
12 So. 3d 220 (Fla. 2009).

### III.   Applicable § 2254 Law

#### A.   Review of Plea-Based Convictions

A federal habeas court reviews a state court's plea-based
conviction only for compliance with federal constitutional
protections. "A reviewing federal court may set aside a state
court guilty plea only for failure to satisfy due process: 'If a
defendant understands the charges against him, understands the
consequences of a guilty plea, and voluntarily chooses to plead
guilty, without being coerced to do so, the guilty plea . . . will
be upheld on federal review.'" Stano v. Dugger, 921 F.2d 1125,
1141 (11th Cir. 1991)(other citations omitted). By entering a
voluntary guilty or no contest plea, a defendant relinquishes
certain rights including, the right to a jury trial, to assistance
of counsel, to raise a defense, and to confront his or her
accusers. Boykin v. Alabama, 395 U.S. 238, 242-44 (1969); United
States v. Broce, 488 U.S. 563, 573 (1989)(explaining that
relinquishment derived not from inquiry into defendant's subjective
understanding of range of potential defenses, but from admissions
necessarily made upon entry of voluntary guilty plea); Tollett v.

Henderson, 411 U.S. 258, 266-67 (1973)(holding that a guilty plea represents a break in the chain of events that preceded it in the criminal process).  For a guilty plea to be entered knowingly and intelligently, "'the defendant must have not only the mental competence to understand and appreciate the nature and consequences of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternative that are available.'"  Finch v. Vaughn, 67 F.3d 909, 914 (11th Cir. 1995)(citations omitted) (emphasis in original); Wallace v. Turner, 695 F.2d 545 (11th Cir. 1982)(noting that nolo contendere plea is treated the same as a guilty plea).

Ineffective assistance of counsel may require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension.  See Hill v. Lockhart, 474 U.S. 52, 56 (1985)(quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").  However, a knowing and voluntary plea waives all constitutional challenges to a conviction, including a claim of ineffectiveness of counsel.  Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992)(pre-plea ineffectiveness waived); see also Hutchins v. Sec. Dept. of Corrections, 273 F. App'x 777 (11th Cir.

2008)(affirming district court's dismissal of a petition challenging effectiveness of counsel when the plea was knowingly and voluntary entered).

### B.   Exhaustion and Procedural Default

A federal court may only review an issue under § 2254 if petitioner first afforded the state courts an adequate opportunity to address that issue.   28 U.S.C. § 2254(b)(1)(A).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004)(internal citations and quotations omitted).  This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts.  Rhines v. Weber, 544 U.S. 269, 274 (2005).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  See also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas

relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Duncan v. Henry, 513 U.S. 364, 365 (1995)(stating "exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'"). Additionally, in articulating a factual basis in support of a claim for relief, a petitioner must have also alleged the factual predicate to the state court. Kelley v. Sec'y for Dep't of Corrs., 377 F.3d 1317, 1343-44 (11th Cir. 2004)(noting that petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petition if they did not first raise them in the state courts).

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . . . ." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual

"prejudice" resulting from the asserted error.  House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d at 1190.  Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice.  House v. Bell, 547 U.S. 518, 536 (2006); Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

## C.  Deferential Review Required By AEDPA

Petitioner filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action.  Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007);  Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).  Consequently, under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  <u>Cullen v. Pinholster</u>, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011).  "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt."  <u>Id.</u> (internal quotations and citations omitted).  <u>See also</u> <u>Harrington v. Richter</u>, 131 S. Ct. at 786 (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." <u>Childers v. Floyd</u>, 642 F.3d 953, 967-68 (11th Cir. 2011).  Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court.  <u>Id.</u>; <u>See also</u>, <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008).  Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." <u>Childers v. Floyd</u>, 642 F.3d at 969 (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court."  <u>Thaler v. Haynes</u>, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); <u>see also</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006)(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412

-26-

(2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision).

"[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts."  Ward, 591 F.3d at 1155 (internal quotations and citation omitted); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).  A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520).

The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155.  Further, the Supreme Court has recently held that

review "is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. <u>Id.</u>

### D. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). <u>Newland v. Hall</u>, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. <u>Newland</u>, 527 F.3d at 1184. In <u>Strickland</u>, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, <u>i.e.</u>, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, <u>i.e.</u>, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688; <u>see also</u> <u>Bobby Van Hook</u>,

558 U.S. ___, 130 S. Ct. 13, 16 (2009); <u>Cullen v. Pinholster</u>, 131 S.Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." <u>Bobby Van Hook</u>, 130 S. Ct. at 17 (internal quotations and citations omitted).  It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006), <u>cert. denied sub nom. Jones v. Allen</u>, 127 S. Ct. 619 (2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (quoting <u>Strickland</u>, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  <u>Id.</u>  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve of a meritless issue.  <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir.), <u>cert. denied sub nom. Ladd v. Burton</u>, 493 U.S. 842 (1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible

or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

### III.  Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Consequently, Petitioner is denied an evidentiary hearing in this matter.

Prior to turning to the individual Grounds identified in the Petition *sub judice*, as recognized by Respondent, the various Grounds raised here "do not mirror" those claims presented by Petitioner in his direct appeal and in his Rule 3.850 motion filed in State court. See Response at 31. Nonetheless, because Petitioner is proceeding *pro se*, the Court will liberally construe the instant Petition and Petitioner's *pro se* Rule 3.850 motion. Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006).

### A.  Ground One

Ground One of the Petition is a compilation of the various grounds Petitioner raises for relief *sub judice*, with the exception of one sub-part.   The Court will address each of Petitioner's repetitive claims set forth in Ground One in conjunction with the discussion of the corresponding individual Ground *infra*. Consequently, the Court will limit its discussion of Ground One to the only claim that is not repetitive:

> Whether the State defaulted by failing to address all of defendant's *pro se* issues in their response to the show cause order.

Petition at 5.   Petitioner explains that the State's December 14, 2007 Response to his Rule 3.850 motion failed "to specifically refute all of [his] claims [that] warranted relief, thereby conceding those issues as true."   Memorandum at 17.   Petitioner does not identify which grounds the State failed to address.   Id.; see also Petition.   Nor, does Petitioner contend that the post conviction court failed to deny each of the grounds identified by him.   Id.

Putting aside the obvious exhaustion issue, the Court finds that this claim does not present a federal constitutional issue for which habeas relief lies.   More specifically, Petitioner assigns constitutional error stemming from his post conviction proceedings. Because there is no federal constitutional requirement that the state provide a means of post conviction review of state convictions, an infirmity in a state post conviction proceeding does not raise a constitutional issue cognizable in a federal

habeas petition. <u>Carroll v. Sec'y, Dep't of Corr.</u>, 574 F.3d 1354, 1366 (11th Cir. 2009); <u>Spradley v. Dugger</u>, 825 F.2d 1566, 1568 (11th Cir. 1986)(claim that post-conviction court erred by not holding a hearing or attaching portions of the record to the order failed to state a cognizable habeas corpus claim); <u>see also Mooris v. Cain</u>, 186 F.3d 581 (5th Cir. 1999)(noting that circuit precedent is abundantly clear that errors in state post-conviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief). Consequently, the Court denies Petitioner relief on Ground One.

**B.   Grounds Two, Three, and Five**

In Ground Two, Petitioner alleges that the prosecution failed to disclose all evidence and destroyed all evidence. Petition at 6.[2] Because the trial court denied Petitioner's motion to dismiss predicated upon these issues, Petitioner contends that he was forced to plea in his underlying case. <u>Id.</u>

In Ground Three, Petitioner claims that he was denied defense counsel at all critical stages of the proceedings, creating a structural error. <u>Id.</u> at 8.[3] In particular, Petitioner submits that the prosecutor "denied defendant counsel when questioning a defense witness Henrietta McKinney in Dobson, N.C., and alienated

---

[2]In Ground One, Petitioner raises the duplicative ground that his due process rights were violated when the State destroyed and failed to disclose evidence. Petition at 5.

[3]In Ground One, Petitioner raises the duplicative ground that the prosecutor denied defendant defense counsel. Petition at 5.

the witness by going outside the merits of the instant case with revelations and allegations of issues that had no bearing on the instant case."[4]  Id.

In Ground Five, Petitioner alleges that he "was denied compulsory process for defense witnesses." Petition at 10.[5] Petitioner submits that the State refused to provide the necessary expenses for defense witnesses to travel and compel their attendance at hearings.  Id.  As a result, Petitioner claims that he was forced to enter a no-contest plea.  Id.

Respondent argues that Grounds, Two, Three and Five are barred by the entry of Petitioner's no-contest plea.[6]  Response at 22. Respondent points out that Petitioner was aware of the factual predicate for each of these Grounds when he entered his plea.  Id.

The Court finds that based upon the record, Petitioner entered a voluntary and knowing plea.  See generally Exhs. 5, 6 and 11. Petitioner did not reserve any issues for appeal.  Id.  The factual

---

[4]Prior to entry of Petitioner's plea, a pretrial hearing was held at which Ms. McKinney testified about her conversation with the prosecutor.  See generally Exh. 34.  The prosecutor, Stephen Schwartz, had previously traveled to North Carolina to depose Ms. McKinney, and defense counsel participated in the deposition by telephone conference.  At the conclusion of the deposition, Mr. Schwartz conversed with Ms. McKinney. After the hearing, the trial court found that there was no improper attempt by the prosecutor to influence the witness.  Id. at 75-76.

[5]In Ground One, Petitioner raises the duplicative ground that he was denied compulsory process.  Petition at 5.

[6]Respondent also submits that certain claims in Ground Eight are barred by Petitioner's plea.  The Court will address Claim Eight infra.

predicate of each of these Grounds was known to Petitioner prior to the entry of his plea.  None of these Grounds affect the knowing and voluntary nature of the plea or challenge the jurisdiction of the trial court.  <u>Tollett v. Henderson</u>, 411 U.S. at 266-67. Consequently, the Court finds Grounds Two, Three, and Five are foreclosed from review as a result of Petitioner's entry of the no-contest plea.

C.    **Ground Four**

In Ground Four, Petitioner claims that the State breached the plea agreement and subjected him to double jeopardy.  Petition at 9.  Petitioner states that he:

> signed a plea agreement [on] July 20th 2004, for 8 years. The plea contract had no mention of a habitual felony offender sentence, however, the State failed to advocate for the specific performance of the contract, and defendant was sentenced as a H.F.O. which was a harsher sentence than the plea agreement allowed, denying defendant of 32 months gaintime, double jeopardy [sic].

Id.  Respondent argues that Petitioner is not entitled to relief on his "breach of plea agreement" claim because "he expressly waived this issue at the time of sentencing."  Response at 44.

As set forth earlier,[7] at the December 1, 2004 sentencing hearing, Petitioner withdrew all of his *pro se* motions, including his motion withdraw his plea.  See Exh. 11 at 3.  Indeed, Mr. LeGrande confirmed immediately after conferring with Petitioner that "the defendant wishes to proceed with the sentencing today . . . recognizing that if he does, that the issue related to the contractual basis is not appealed [sic]."  Id. at 10-11.  Thus, Petitioner waived his right to challenge whether the habitual offender sanctions were part of the plea agreement.

Nonetheless, on direct appeal, Petitioner argued that his plea was involuntary because he understood his plea bargain called for

---

[7]See pages 14-15 *supra*.

an eight year sentence without habitualization.  Exh. 13 at 13-20.[8]
In its answer brief, the State argued that the voluntary and
intelligent nature of Bigelow's plea was not preserved for review,
and thus, Bigelow was collaterally estopped from taking a different
position on appeal.  Exh. 14 at 6-11.  The State argued only lack
of preservation and did not argue the merits of Petitioner's
"involuntary plea" and "breach of contract" issues.  <u>Id.</u>  The
appellate court affirmed Bigelow's judgment and sentence.

Based on the record, the Court finds Petitioner waived Ground
Four when he withdrew his claim before the court and elected to
proceed with the sentencing.  Consequently, Ground Four is
unexhausted and now procedurally barred based on Florida law.
Petitioner neither demonstrates cause and prejudice, nor
entitlement to the fundamental miscarriage of justice exception to
excuse his default.  Likewise, Petitioner has not shown the
applicability of the actual innocence exception.  Accordingly, the
Court dismisses Ground Four as procedurally defaulted.

**D.  Ground Six**

In Ground Six, Bigelow contends the "biased judge displayed
'apparent' biased rulings on the record."  Petition at 11.  In
particular, Petitioner alleges that at the October 27, 2004
hearing, the judge gave "advice (counsel) to the prosecutor
explaining how to breach defendant's plea agreement" resulting in

---

[8]On direct appeal, Petitioner also included the argument that
he did not qualify for habitual offender sentencing under the
Florida statutes.

Bigelow being given a "harsher sentence" and "trespassing" on him. Id. Respondent submits that this ground is procedurally barred because it was not raised on direct appeal. Response at 41.

In Florida, "any claim of judicial bias during trial should have been raised on direct appeal . . . ." Rodriguez v. State, 919 So. 2d 1252, 1274 (Fla. 2005). Here, Petitioner made a passing reference to the trial court's alleged impartiality in his Rule 3.850 motion in support of his fourth ground for relief. Exh. 17 at 12. However, Petitioner did not properly present this Ground on direct appeal. See generally Exh. 13. Consequently, the Court finds Petitioner has not exhausted Ground Six and it is now procedurally defaulted. Petitioner has neither alleged nor shown cause or prejudice to excuse any procedural default. Likewise, Petitioner has not shown the applicability of the actual innocence exception. Accordingly, the Court dismisses Ground Six as procedurally defaulted.

**E.   Ground Seven**

Petitioner alleges that the State prosecutor had a conflict of interest because his original defense attorney, Mr. Larry Justham,[9] "was an associate of the prosecutor, Mr. Stephen Schwarz, and was employed by the state attorney's office during the prosecution of

---

[9]It appears that Mr. Justham originally represented Bigelow when the charges were initially brought in 1991. Apparently at some point in time, Mr. Justham went to work as a State prosecutor, although it is not clear in which office he worked, on what cases he worked, or if he even knew Stephen Schwartz, the prosecutor assigned in 2004 to Petitioner's case. Thirteen years elapsed between the filing of the initial charges and Bigelow's recapture.

the instant case." Petition at 13. Petitioner contends that "[t]hese associates had an opportunity for discussion behind closed doors." Id. Further, Petitioner faults the trial court for failing to inquire into this conflict of interest when it was presented to the court. Memorandum at 18. In Response, Respondent claims that this Ground is procedurally barred because Petitioner did not raise the claim on direct appeal, or in the Rule 3.850 motion. Response at 42.

Upon review of the record, the Court finds that this Ground is unexhausted and is now procedurally barred. Claims alleging prosecutorial misconduct must be raised on direct appeal. Spencer v. State, 842 So.2d 52, 60 (Fla. 2003). Petitioner did not raise a claim that the prosecutor had a conflict of interest or committed any acts of misconduct on direct appeal. See generally Exh. 13. Further, Petitioner has not demonstrated any of the exceptions to excuse his procedural default of this Ground.[10] Consequently, the Court dismisses Ground Seven as procedurally defaulted.

**F.   Ground Eight**

In Ground Eight, Petitioner alleges a litany of instances in which he contends that trial and appellate counsel rendered ineffective assistance. Petition at 15. More specifically, Petitioner assigns blame to **trial counsel** for: failing to investigate his "documented psychological disability in effect" in

---

[10]Additionally, the Court finds Ground Seven is barred by entry of Petitioner's *nolo contendere* plea.

1991 (Ground Eight (A)(1)); failing to investigate his "long history of disability and treatment" and presenting this issue before the court (Ground Eight (A)(2)); failing to move for dismissal due to prosecutorial misconduct concerning defense witness Henrietta McKinney (Ground Eight (A)(3)); and, failing to preserve issues of merit and issues "defendant requested" for direct appeal, and waiving "critical issues without a thorough inquiry of defendant's understanding and comprehension of the rights" that counsel is waiving (Ground Eight (A)(4)). In Grounds (A)(1) and (A)(2) Petitioner is essentially arguing that his lack of mental capacity was a defense to his crimes. Petition (Doc. #1-2) at 2.[11] Petitioner acknowledges that he told Mr. Wetter of his "pre-existing disability" but counsel did not investigate it. Id. In Ground (A)(3), Petitioner is challenging the fact that defense counsel did not seek dismissal due to the prosecutor's alleged misconduct.

The Court finds that Grounds Eight(A)(1), (A)(2), and (A)(3) are foreclosed as a result of Petitioner's knowing and voluntary plea. Pre-plea ineffective assistance of counsel claims are also waived by entry of a knowing and voluntary plea. Wilson v. U.S.,

---

[11]Petitioner without specificity claims that at the time of the offense he "was suffering under a pre-existing psychological mental defect which impaired his ability to reason and exercise his free will, and had been receiving ongoing disability payments form the government's own 'social security administration' since 1978 and continuing on and beyond August 14, 1991." Petition (Doc. 1-2 at 2). Petitioner, however, fails to identify the exact nature of his "mental defect."

962 F.2d 996, 997 (11th Cir. 1992);  Bradbury v. Wainwright, 658
F.2d 1083, 1087 (5th Cir. 1981), cert. denied, 454 U.S. 992 (1982);
see also Ivanovic v. McNeil, Case No. 08-62068-CIV, 2010 WL 520601
*11 (S.D. Fla. Feb. 10, 2010)(stating "claims challenging the
representation of counsel with regard to the investigation and
pursuit of possible defenses to the crimes committed do not relate
to the voluntariness of the plea.  They are therefore waived by the
entry of the guilty pleas.").  Thus, the Court finds Grounds
8(A)(1), (A)(2), and (A)(3) barred from review by Petitioner's
entry of his knowing and voluntary no-contest plea.

In Ground 8(A)(4), Petitioner faults trial counsel with
failing to preserve meritorious issues for appeal.  Petition at 15.
The State court record demonstrates that Petitioner raised a
similar claim for relief within ground four of his Rule 3.850
motion.  Exh. 17 at 12, 18.  After identifying the two-prong
Strickland standard as the controlling law, the post conviction
trial court denied Petitioner relief.  See generally Exh. 28.  The
post conviction court's order was per curiam affirmed on appeal.
Exh. 31.

The State court correctly cited to and applied the governing
federal precedent.  Petitioner fails to demonstrate that the State
court's decision was objectively unreasonable.  "[W]hen a defendant
raises the unusual claim that trial counsel, while efficacious in
raising an issue, nonetheless failed to preserve it for appeal, the
appropriate prejudice inquiry asks whether there is a reasonable
likelihood of a more favorable outcome on appeal had the claim been

preserved." <u>Davis v. Sec'y for the Dep't of Corr.</u>, 341 F.3d 1310, 1316 (11th Cir. 2003)(*per curiam*)(citation omitted).   Here, Petitioner provides no factual basis as to how he was prejudiced by his counsel's acts or omissions or what meritorious arguments he should have preserved for appeal.   "Conclusory allegations of ineffective assistance of counsel are insufficient." <u>U.S. v. Lawson</u>, 947 F.2d 849, 852 (7th Cir. 1991).

Based upon a through review of the record, the Court finds that the State courts' adjudications of this Ground were not contrary to clearly established law and did not involve an unreasonable application of clearly established federal law.   Nor were the decisions based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.   Thus, the Court finds that Petitioner is not entitled to relief on Ground 8(A)(4).

Finally, in Ground Eight(B)(1) and (2), Petitioner raises to two allegations of ineffective assistance of **appellate counsel**. Petition at 15.[12]   However, both ineffective assistance of appellate counsel claims are unexhausted and procedurally barred because Petitioner did not file a petition alleging ineffective assistance of appellate counsel in the Second District Court of Appeal pursuant to Rule 9.141 of the Florida Rules of Appellate Procedure. Under Florida law, this avenue of relief is no longer available to

---

[12]In Ground One, Petitioner raises the duplicative ground that he was denied appellate counsel due to appellate counsel failing to raise all arguable grounds on direct appeal.   Petition at 5.

Petitioner.[13] Here, Petitioner's judgment and sentence became final on September 14, 2007, upon the appellate court's mandate on direct appeal. <u>Anton v. State</u>, 976 So. 2d 6, 8-9 (Fla. 2d DCA 2008). Accordingly, Petitioner's two-year period expired on September 14, 2009. Consequently, Ground Eight(B)(1) and (2) are dismissed as unexhausted and procedurally barred.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED with prejudice** for the reasons set forth above.

2.   The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). <u>Id.</u> "A [COA] may issue . . . only if the applicant has

---

[13]In pertinent part, Rule 9.141(c)(4)(B) provides:

(B)  A petition alleging ineffective assistance of appellate counsel on direct review shall not be filed more than 2 years after the judgment and sentence become final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel.

made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) Petitioner has not made the requisite showing in these circumstances.  Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

   **DONE AND ORDERED** in Fort Myers, Florida, on this   28th   day of March, 2012.

_____
JOHN E. STEELE
United States District Judge

SA: hmk

Copies: All Parties of Record